UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL DIVISION – EASTERN DIVISION (BOSTON)

CHARLES G. WILLIAMS III, ESQ.
    PLAINTIFF

vs.

Miscellaneous case number/unknown
(Local Case no. USDC Maine 04-CV95)

THE SUPREME JUDICIAL COURT
OF THE STATE OF MAINE, et. al.
    DEFENDANTS

**04** MBD **10206**

## SUPPLEMENT TO PLAINTIFF'S MOTION FOR SANCTIONS AGAINST J. SCOTT DAVIS, ESQ. JAMES CHUTE, ESQ., AND JAMES HENDERSON, STATE ARCHIVIST

NOW COMES, Charles G. Williams III, pro se, who respectfully requests that this Honorable Court consider this brief supplement to his motion for sanctions against J. SCOTT DAVIS, ESQ., JAMES CHUTE, ESQ., AND JAMES HENDERSON, STATE ARCHIVIST for failure to respond to this Court's Subpoena Duces Tecum, served upon them on July 25, 2004:

### SUMMARY OF THE ARGUMENT

Charles G. Williams III (Mr. Williams) received by regular U.S. Mail objections to the subpoenas deuces tecum issued from this court in support of Mr. Williams's pending Title 42 U.S.C. §1983 lawsuit within the District of Maine (USDC Maine 04CV95). The objections arrived too late to be of any service. Moreover, the objections are not sufficiently detailed to provide Mr. Williams or this Court any information to either tailor the discovery demands, or in other ways protect Davis where his objections contain neither facts nor explanations to justify his objections. Moreover, the objections raise lack merit.

### SUPPLEMENTAL FACTS IN SUPPORT OF SANCTIONS

Mr. Williams received Davis's objections to the subpoena duces tecum on July 9, 2004, at approximately 12:45 p.m. from his mailbox. See Declaration of Charles G. Williams iii ¶¶1-3. The objections to the subpoena duces tecum were consolidated with those of two other persons, James Henderson, and James Chute, Esq. See Attachment #1. The letter indicates that Mr. Davis (and the other two persons named) objected for five (5) reasons: (1) the case for which the subpoenas issued was dismissed; (2) the subpoenas were not properly served; (3) the subpoenas do not give a reasonable amount of time for

1

compliance (4) the documents sought are not relevant; and, it would be unreasonably burdensome to comply with the subpoenas. *See* Attachment #1, Letter of Objection offered by Christopher Taub, Esq. Mr. Taub (Taub) also represents all of the defending parties to the lawsuit.

### BRIEF SUPPLEMENTAL ARGUMENT IN SUPPORT OF SANCTIONS

*1. Despite objection letter, response to subpoena was not timely filed as required under rule 45.*

In addressing this new piece of evidence, the objections filed by Davis, we begin with bedrock. It is axiomatic that non parties subject to a subpoena must respond within the time designated within the subpoena or face contempt sanctions under Federal Rule of Civil Procedure 45(d). See e.g. See Federal Rule of Civil Procedure 45(d). Under Rule 45, the nonparty served with the *subpoena duces tecum* must make objections to it within 14 days after service <u>or before the time for compliance</u>, if less than 14 days. Fed. R. Civ. P. 45(c)(2)(B). Failure to serve timely objections <u>waives all grounds for objection, including privilege</u>. *See e.g., In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998). "When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials. the claim shall be made expressly and shall be supported by a description of the nature of the documents. communications. or things not produced that is sufficient to enable the demanding party to contest the claim." Fed. R. Civ. P. 45(d)(2). In computing the time for compliance or objections. Rules 5 and 6 of the Federal Rules of Civil Procedure are inapplicable to non-parties served with subpoenas. *See e.g. Lehman v. Kornblau.* 206 F. R. D. 345. 346 (E. D. N.Y. 2001)(Fed. R. Civ. P. 5 does not apply to service upon non-parties); *see also.* Fed. R. Civ. P. 45 (Practice Commentary C45-9)(Fed. R. Civ. P. 4 does not apply to the service of subpoenas to non-parties). Service of subpoenas may be achieved by certified mail upon the non-party. *See e.g.. Doe v. Hersemann.* 155 F.R.D. 630. 631 (N.D. Ind. 1994).

Accordingly. it is clear that Mr. Davis failed to make a timely objection. As Rule 45 requires. where the time for compliance is less than 14 days. the objection must be made prior to the deadline imposed by the subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B). This required Davis, Henderson, and Chute to actually serve Mr. Williams on the due date, if not before. Service was not achieved by July 2, 2004, where Mr. Williams

2

received the objections on July 9, 2004. Simply by placing the letter in the mail stream, by regular first class postage, three states away, on July 1, 2004, is neither reasonable, nor enough to comply with the mandate of Rule 45. As none are party to this suit, they were obligated to <u>actually</u> deliver his objections on or before the due date.

   2.  *Even assuming that this District Court give leeway to Davis, his objections are legally insufficient to justify non-compliance.*

   Should this Court overlook the untimely objection, the objections offered are legally insufficient. Mr. Williams shall address each one *seriatim.*

        a.  *The Case has not been "dismissed."*

   First, though it is true, that the District Court entered a judgment against Mr. Williams on July 25, 2004, the day the subpoenas were actually served. However, the case is not dismissed, as described within the objection. A timely motion for new trial or reconsideration under rule 59 alters the procedural posture of the case. If a timely Rule 59 motion is filed within ten (10) days of the entry of judgment in civil case, it suspends the finality of the judgment and the court may grant the motion after the ten day period has expired. See generally, Fed. R. Civ. P. 59; <u>see also</u>, Wright, Miller & Kane, <u>Federal Practice and Procedure:</u> Civil 2d §2812. p.141-142. Moreover. if a timely motion has been filed under Rule 59 has been made and not disposed of the case lacks finality. See Wright. Miller & Kane, Federal Practice and Procedure: Civil 2d §2821, p.220. Thus, any filing of a notice of appeal while a timely motion is pending is a nullity, and deprives the Circuit Court of Appeal of jurisdiction over this case until the motion is adversely decided. <u>See</u> Fed. R. App. P. 4(a), Fed. R. Civ. P. 59(a-b), <u>and</u> Aybar v. Crispin-Reyes, 118 F.3d 10, 14 (1st Cir. 1997)("Timely motions under rules . . .52(b)and 59 suspend the finality of the original judgment [...]."); Wright, Miller & Kane, <u>Federal Practice and Procedure:</u> Civil 2d §2821, p. 222-223. In short, the judgment is not final and the case is <u>not</u> closed <u>unless</u> or until the timely motion for new trial is denied.

   A timely motion was filed and served on July, 6 2004. *See* Pacer USDC Maine 04-CV95.

At present, as of the date of this letter, the motion has not been denied, according to my records. Indeed, the time for opposition to the motion has not lapsed. Moreover, as mentioned above the motion for new trial was timely filed and served upon the defendants (though the need for service is questionable where they were never served with process to begin with). According to Federal Rule of Civil Procedure 6, in computing any time proscribed under the rules of civil procedure, the day of the act is not counted, thus, the ten day period to file and to serve the motion for reconsideration was due on July 6, 2004, ten days from the entry of the judgment on June 25, 2004.

> b.   *The Subpoenas were properly served.*

As mentioned earlier, a non-party may be served with a subpoenas duces tecum by certified mail. *See e.g., Doe v. Hersemann,* 155 F.R.D. 630, 631 ( N.D. Ind. 1994). The Record evidence of this motion clearly indicates that Mr. Davis received the certified letter, containing the subpoena on June 25, 2004, two days after mailing.

> c.   *The objection doe not state why the documents demanded were not relevant.*

Relevance is an inclusive term under Rule 45. Thus, objections on this ground are difficult to sustain. Discovery may encompass, any matter that bears on any issue in the case . . ." *Santiago v. Fenton,* 891 F.2d 373, 379 (1st Cir. 1989). Relevance includes "any matter that is or may become an issue in the litigation." *Mulit-Core, Inc. Southern Water Treatment Co.,* 139 F.R.D. 262, 264 N.2 (D. Mass. 1991). The material sought need not be admissible, but only need to appear, "reasonably calculated to lead to admissible evidence." Fed. R. Civ. P. 26(b)(1). Thus, to sustain this objection, the party subject to subpoena must demonstrate that the documents cannot reasonably lead to discoverable information at issue in the litigation. The burden of proof is on the person *opposing production* under the subpoena. *See e.g.,  Stewart v. Mitchell Transport,* 2002WL1558210 at *4 (D. Kan. 2002).

As a threshold matter, the objection does not explain why the documents are not relevant. *See* attachment #1. It does not attempt to explain why the documents cannot possibly lead to any relevant

4

information discoverable or not. Failure to make this minimal showing is sufficient to deny the objection. *See Stewart*, at \*4.

Assuming the objection is deemed sufficiently detailed, it sill cannot preclude disclosure. Mr. Williams suit is a section 1983 claim against the Maine Supreme Judicial Court, the Maine Board of Bar Overseers, and others. One of the essential claims within the suit alleges that Mr. Williams was intentionally discriminated against by Justice Paul L. Rudman, presiding justice over Mr. Williams disbarment proceedings on the basis of Mr. Williams' Race.

The U.S. Supreme Court has, "consistently repudiated '[distinctions] between citizens solely because of their ancestry' as being 'odious to a free people whose institutions are founded upon the doctrine of equality,'" *Loving v. Virginia*, 388 U.S. 1, 11 (1967)(*quoting Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)). "Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination." *University of California Regents v. Bakke*, 438 U.S. 265, 291 (1978). There can be no doubt that when individual rights are involved all must stand on an equal footing before the bar of justice. Furthermore, a classification which serves as a basis for unreasonable and arbitrary discrimination between persons in meting out justice violates the Fourteenth Amendment. There can be no equal justice where the kind of hearing one gets in court, or the disposition of his case, depends upon the degree of melanin within his skin. "Any preference based on racial or ethnic criteria must necessarily receive a most searching examination to make sure that it does not conflict with constitutional guarantees." *Fullilove v. Klutznick*, 448 U.S. 448, 491 (1980).

To establish a claim under the Equal Protection Clause of the 14th Amendment, as stated above, based upon disparate treatment based upon race, the plaintiff must allege the following: (1) that the Plaintiff is a member of a protected racial minority group; (2) that the Plaintiff was treated materially differently from all other similarly situated persons; (3) that the discrimination was the product of discriminatory intent by the state actor; and (4) that no rational basis exists which justifies the distinction made by the state actor, or that the state action is merely erroneous devoid of racial animas. *See Snowden*, 321 U.S. at 8. Where the official action purports to be in conformity to the statutory classification, a merely erroneous or mistaken

5

performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws. *See Snowden,* 321 U.S. at 8. There must be "an element of intentional or purposeful discrimination" to transform the erroneous administration of a statute fair on its face into a violation of the equal protection clause. *Id. See also, Claudio Bauza,* 578 F.2d at 452. This "discriminatory purpose is not presumed ... there must be a showing of 'clear and intentional discrimination.'" *Snowden,* 321 U.S. at 8-9.

Consider first, that the plaintiff would be able to clearly demonstrate disparate treatment based upon the replies to the subpoena. For example, if answered honestly, would have disclosed the following: (1) that the order "temporarily" suspending the Plaintiff never specified on its face when or if a final adjudication would ever take place; (2) that the Plaintiff filed a motion to rescind the temporary suspension with supporting documentation and supplement; (3) that Bar Counsel never offered proof to Rudman, or the Respondent that he obtained leave of the Board of Bar Overseers of Maine prior to seeking the temporary suspension; (4) that the Respondent filed a motion to rescind which alleged the delay in commencing a final pot-deprivation hearing was unconstitutional due to the injury to the Respondent's interests caused by the delay; (5) that Rudman possessed the statutory, regulatory, or common law authority to inquire of Bar Counsel when or if he would filed formal charges which would give rise to a final post-deprivation hearing; (6) that Rudman never received any opposing papers or motions to the motion to rescind; (7) that Rudman never asked the Board of Bar Overseers to address any of the legal or factual issues presented within the motion to rescind the suspension filed with Rudman on April 19, 2002; (8) that Bar Counsel refused to release the transcript of administrative proceedings which would have refuted the factual allegations within his affidavit against the Respondent in Support of the suspension; and (9) that Rudman refused to consider the merits of the motion. Moreover, the Plaintiff would have been able to prove disparate treatment where he requested – more than once – the disciplinary files of all other similarly situated persons who were suspended by the defendants over the past years.

A comparison of case files of all other non-Black respondents described above (pp. 4-5) and in the Respondent's own case will demonstrate that every other non-Black attorney in the state for the past years

6

who presented any constitutional or procedural challenges to their disciplinary proceedings had their

challenges heard and decided consistent with, and required by *Bassford*. In sum, The Respondent was

clearly singled out without rational basis or justification, by Rudman's refusal to rule upon the merits of the

constitutional and factual issues presented.

But as stated above, that is not the end of the discussion. The Equal Protection Clause requires

that in applying a facially race-neutral rule like Me. Bar R. 7.2(c), the Plaintiff must also show that the

discriminatory use of the rule was the product of intentional racial discrimination. 321 U.S. at 8-9.  The U.S.

Supreme Court stated in *Snowden* that intent to discriminate may be demonstrated in several ways:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal
> application to those who are entitled to be treated alike, is not a denial of equal protection unless there
> is shown to be present in it an element of intentional or purposeful discrimination. This may appear on
> the face of the action taken with respect to a particular class or person, cf. *McFarland v. American
> Sugar Co., 241 U.S. 79, 86-7,* or it may only be shown by extrinsic evidence showing a discriminatory
> design to favor one individual or class over another not to be inferred from the action itself, *Yick Wo v.
> Hopkins, 118 U.S. 356, 373-4.* But a discriminatory purpose is not presumed, *Tarrance v. Florida, 188
> U.S. 519, 520;* there must be a showing of "clear and intentional discrimination," *Gundling v. Chicago,
> 177 U.S. 183, 186;* see *Ah Sin v. Wittman, 198 U.S. 500, 507-8; Bailey v. Alabama, 219 U.S. 219, 231.*
> Thus the denial of equal protection by the exclusion of negroes from a jury may be shown by extrinsic
> evidence of a purposeful discriminatory administration of a statute fair on its face. *Neal v. Delaware,
> 103 U.S. 370, 394, 397; Norris v. Alabama, 294 U.S. 587, 589; Pierre v. Louisiana, 306 U.S. 354, 357;
> Smith v. Texas, 311 U.S. 128, 130-31; Hill v. Texas, 316 U.S. 400, 404.* But a mere showing that
> negroes were not included in a particular jury is not enough; there must be a showing of actual
> discrimination because of race. *Virginia v. Rives, 100 U.S. 313, 322-3; Martin v. Texas, 200 U.S. 316,
> 320-21; Thomas v. Texas, 212 U.S. 278, 282;* cf. *Williams v. Mississippi, 170 U.S. 213, 225.*

See *Snowden*, 321 U.S. 1, 9-10 (1944). *See also, Claudia Bauza, etc., v. Arturo Morales Carrion*, 578 F.2d
447, 451-452, 452 n.6 (1st Cir. 1978)(*citing Snowden v. Hugues*, 321 U.S. 1, 9-10 (1944)).

The *Snowden* Court stated further that intentional discrimination by public officials can be

demonstrated the intent to bring about the practical effect of *de jure* discrimination by the use of a facially

race-neutral statute or rule in a racially discriminatory manner:

> Another familiar example is the failure of state taxing officials to assess property for taxation on a
> uniform standard of valuation as required by the assessment laws.  It is not enough to establish a denial
> of equal protection that some are assessed at a higher valuation than others. The difference must be
> due to a purposeful discrimination, which may be evidenced, for example, by a systematic under-
> valuation of the property of some taxpayers and a systematic over-valuation of the property of others,
> so that the practical effect of the official breach of law is the same as though the discrimination were
> incorporated in and proclaimed by the statute. *Coulter v. Louisville & Nashville R. Co., 196 U.S. 599,
> 607, 609-10; Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 597; Sunday Lake Iron Co. v.*

*Wakefield, 247 U.S. 350, 353; Southern Ry. Co.* v. *Watts, 260 U.S. 519, 526.* n2. Such discrimination may also be shown to be purposeful, and hence a denial of equal protection, even though it is neither systematic nor long-continued. *Cf. McFarland v. American Sugar Co., supra.*

*See Snowden,* 321 U.S. 1, 9-10 (1944). *See also, Claudia Bauza, etc., v. Arturo Morales Carrion,* 578 F.2d 447, 451-452, 452 n.6 (1st Cir. 1978)(*citing Snowden v. Hugues,* 321 U.S. 1, 9-10 (1944)).

With this guidance, it is clear that the Respondent has proven intentional discrimination. First, it its well established within Maine law that Respondent Attorney's have the right and ability to raise constitutional challenges to both ethical cannons as well as procedural rules during disciplinary actions against them before the Defendants. *See e.g., Bd. Of Bar Overseers v. Dineen,* 557 A.2d 610, 613 (Me. 1989)(Per Curiam)(addressing attorney's allegation that he was deprived of a "full and fair," trial in violation of his procedural due process); *Bd. Of Bar Overseers v. Mangan,* 2001 Me. 7 ¶¶18-20; 763 A.2d 1189, 1194-1195(Me. 2001)(Per Curiam)(considering procedural due process claims raised by respondent attorney "frivolous," after review of his legal argument in support). Indeed, justices of the Supreme Judicial Court of Maine, whether individually or collectively, have an inviolate, *non-discretionary duty to hear and to decide constitutional issues* properly presented to them. *State v. Bassford,* 440 A.2d 1059, 1060(Me. 1982). In other words, Defendant Rudman cannot, "shrink from [his] duty by assuming, rather than determining, the constitutionality of a statute [or rule] where the resolution of that issue is necessary to the resolution of any significant part of litigation properly before [him]." *Id.* Put another way, Rudman cannot, as a matter of choice, refuse to address and to decide constitutional issues presented to him. The Board might quip, "How is this relevant?" Well, as mentioned previously, it is beyond dispute that under the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution, litigants are entitled to legal proceedings and a tribunal completely free from influence by improper racial animus and bias. *Batson v. Kentucky,* 476 U.S. 79, 84-89, 106 S. Ct. 1712, 1716-19, 90 L. Ed. 2d 69 (1986); *Turner v. Murray,* 476 U.S. 28, 35-38, 106 S. Ct. 1683, 1687-1689, 90 L. Ed. 2d 27 (1986); *Rose v. Clark,* 478 U.S. 570, 587, 106 S. Ct. 3101, 3110-11, 92 L. Ed. 2d 460 (1986); *United States ex rel. Haynes v. McKendrick,* 350 F. Supp. 990, 999 (S.D.N.Y. 1972) (citations omitted) *aff'd,* 481 F.2d 152 (2d Cir. 1973). Since the Court lacked any discretion in this matter, the Respondent possessed an inviolate right to have this court determine the merits of the

constitutional challenge offered by his motion. Moreover, the denial of the motion was intentional, where Rudman knew, Or should have known, where his refusal to consider the motion's merits would result in the prolongation of the so-called year-long temporary suspension.

Thus, Defendant Rudman's refusal to address *any* of the constitutional challenges to Me. Bar R. 7.2(c) by summarily denying the motion to rescind the temporary suspension was both a deliberate act, and facially discriminatory. Moreover, the Plaintiff would prove that *Defendant Rudman intentionally discriminated against the Plaintiff on the face of his actions.* The facts will show that every other non-Black attorney in the state of Maine who ever faced disciplinary action by the Defendants, who raised constitutional or procedural challenges to the proceedings – for any reason --, had their issues heard and decided by the Defendants jointly or individually. This information demonstrates that Defendant Rudman intentionally deprived the respondent of the benefit of the equal protection of law, where he and his colleagues systemically protect the constitutional due process and property interests of all other similarly situated persons, yet Rudman refused to consider and protect the interests of the Plaintiff, and where the sole reason for the distinction made is race. Rudman's July 3, 2002, decision contains no finding of fact, or conclusions of law of any kind. The order does not explain why he refused to address the constitutionality of Me. Bar R. 7.2. The order does not offer any rational basis for Rudman's refusal to follow his obligation to consider the constitutional arguments posed by the Plaintiff as required under *Bassford.* Finally, it is undisputed that the Respondent is an attorney of color.

Rudman's blatant refusal to consider the constitutional claims offered by Attorney Williams takes on an added dimension where his refusal to follow state law is unexplained, unsupported, and unreasonable. According to the case law generated by the Appellees within <u>Maine Reports,</u> every similarly situated lawyer who has ever raised a constitutional claim – whether frivolous or not – had his claims addressed by the Appellees, whether jointly or individually. *See e.g., Bd. Of Bar Overseers v. Dineen,* 557 A.2d 610, 613 (Me. 1989)(Per Curiam)(addressing attorney's allegation that he was deprived of a "full and fair," trial in violation of his procedural due process); *Bd. Of Bar Overseers v. Mangan,* 2001 Me. 7 ¶¶18-20; 763 A.2d 1189, 1194-1195(Me. 2001)(Per Curiam)(determining that procedural due process claims raised

by respondent attorney considered by single justice "frivolous," after review of his legal argument in support). The facts of this case, as well as the record of the disciplinary case against Attorney Williams, state that Defendant Rudman refused to consider and to rule upon the constitutionality of Me. Bar R. 7.2. The sole distinguishing factor between Attorney Williams and the other attorneys described within Maine Reports is race. Attorney Williams is one of a sparse handful of African American attorneys within Maine. It is clear that Attorney Williams has a right to present and have addressed constitutional challenges. Attorney Williams was clearly singled out by Defendant Rudman by Rudman's clear refusal to follow his duty described within *Bassford*, where every other attorney subject to discipline as reported by the Appellees had their constitutional issues decided, and considered. And it is also clear that Defendant Rudman has intentionally deprived Attorney Williams of that right without any legitimate legal excuse. Most important of all, the discovery sought would have demonstrated that Defendant Rudman refused to hear and consider the constitutional challenge to Me. Bar R. 7.2(c); and discriminated against the Plaintiff on the basis of race. The documentation demanded would generate all persons who have been disciplined by the defendants, and whether they raised any constitutional or factual challenges to the proceedings. The information will give social security numbers, addresses, and birthplaces of the persons who have been disciplined, so that Mr. Williams can then obtain birth records or death records, which will disclose the racial identity of all persons disciplined by the defendants. This information is essential to establish that all other persons, are non-black, and were afforded the protections of the law as described above.

Finally, it is clear that a comparison of all persons similarly situated is required; it is not enough to merely point to one or two anomalous cases to prove disparity. For example, this Circuit stated in *Barrington Cove Ltd.*, that claims of disparate treatment must be proven by *proof* that the party making the claim *in comparison to all others similarly situated* was adversely selectively treated by the government on the basis of his race.[1] In short, to prevail on this claim, Williams must show by *evidence* that he was treated materially

---

[1] *Barrington Cove, Ltd. v. Rhode Island Housing Authority*, 246 F.3d 1, 6 (1st Cir. 2001).

differently in comparison to all other disciplined attorneys before the Respondents.[2] Maine law reaches an identical conclusion. The documentation demanded would clearly lead to such proof.

        d.   *The objection does not state why the documents are burdensome.*

In like vein, the objection does not explain *why* the request is burdensome. It does not explain the financial or physical burdens placed upon the person to produce the required documents. *See* Attachment #1. Failure to explain or reasonably justify an objection to a subpoena is sufficient to deny protection. See Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d §2459. Without this showing, neither the court, nor Mr. Williams can asses whether the demand needed to be tailored.

        e.   *The objection does not state why the time permitted is not sufficient to comply with the subpoena.*

Equally defective is the complaint that sufficient time was not afforded to comply with the subpoena. See attachment #1. It is clear from the letter that it does not indicate *why the amount of time is insufficient*. As such, this too may be discounted. Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d §2459.

Accordingly, Mr. Williams requests that this court compel disclosure against the person named above.

Respectfully Submitted,

Charles G. Williams III
115 John Dunn Drive, #1A
Rockland, MA 02370
(781) 762-1473

One complete copy of the forgoing document was sent via regular U.S. Mail to C. Taub, located at 6 Statehouse Station, Augusta, ME 04333-0006, on July 15, 2004.

Charles G. Williams III

---

[2] *Ibid. See also, Polk v Town of Lubec,* 756 A.2d 510, 513, 514; 2000 ME 152, ¶¶15-16 (Me. 2000)(Saufley, J.)(plaintiff failed to prove equal protection claim where he offered no documentary proof that he was impermissibly discriminated against or treated differently in comparison to all other persons similarly situated).



G. STEVEN ROWE
ATTORNEY GENERAL

Telephone: (207) 626-8800
TDD: (207) 626-8865

STATE OF MAINE
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA, MAINE 04333-0006

REGIONAL OFFICES:

84 HARLOW ST., 2ND FLOOR
BANGOR, MAINE 04401
TEL: (207) 941-3070
FAX: (207) 941-3075

44 OAK STREET, 4TH FLOOR
PORTLAND, MAINE 04101-3014
TEL: (207) 822-0260
FAX: (207) 822-0259
TDD: (877) 428-8800

128 SWEDEN ST., STE. 2
CARIBOU, MAINE 04736
TEL: (207) 496-3792
FAX: (207) 496-3291

July 1, 2004

*BY FIRST CLASS MAIL*

Charles G. Williams III, Esq.
112 Plymouth Drive, 1B
Norwood, MA 02062

      Re:    *Charles G. Williams, III v. The Individual Justices of the Supreme Judicial Court
           of the State of Maine*
           Civil Action Number: 04-cv-95

Dear Mr. Williams:

      Please be advised that, pursuant to Fed. R. Civ. P. 45(c)(2)(B), James Chute, Esq., J. Scott Davis, Esq., and James Henderson hereby object to the subpoenas duces tecum you recently sent to them. These subpoenas request the production of certain documents. We object to producing these documents on the following grounds:

1.      The lawsuit in which the subpoenas were issued has been dismissed;

2.      The subpoenas were not properly served;

3.      The subpoenas do not allow reasonable time for compliance;

4.      The subpoenas seek documents which are not relevant and which are not reasonably calculated to lead to the discovery of admissible evidence; and,

5.      It would be unduly burdensome to respond to the subpoenas

      If you have any questions in this matter, please do not hesitate to contact me.

                  Very truly yours,

                  Christopher C. Taub
                  Assistant Attorney General

cc:     James Chute, Esq.
        J. Scott Davis, Esq.
        James Henderson

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL DIVISION – EASTERN DIVISION (BOSTON)

CHARLES G. WILLIAMS III, ESQ.
    PLAINTIFF

    *vs.*

THE SUPREME JUDICIAL COURT
OF THE STATE OF MAINE, et. al.
    DEFENDANTS

**Miscellaneous case number/unknown
(Local Case no. USDC Maine 04-CV95)**

### DECLARATION OF CHARLES G. WILLIAMS III IN SUPPORT OF MOTION TO COMPEL

I, Charles G. Williams III, Esq., do herein state the following facts and circumstances described below are true and accurate based upon my personal observation, and experience to the best of my direct knowledge and belief under penalty of perjury as required under 28 U.S.C. §1746 (West 2000), and permitted as described within *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686, 689 (1st Cir.1993).

1. My name is Charles G. Williams III, residing at 115 John Dunn Drive, #1A, Rockland, MA 02370.
2. I received attachment #1, a letter from Christopher Taub, Esq., objecting to my subpoenas on July 9, 2004, in that days mail from my mailbox stated within ¶1.
3. The letter was sent via regular U.S. Mail, with regular postage.

Signed,

Charles G. Williams III